Joseph HARDY and Harvey L. Sherrod, individually and as a participant in the Local 95 Insurance Trust Fund and the Local 95 Pension Fund, and on behalf of all other persons who are, will be, or have at any time since January 1, 1980 been participants or beneficiaries in the Funds, similarly situated, Plaintiff,

v.

KASZYCKI & SONS CONTRACTORS, INC.; William Kaszycki; John Senyshyn; Trump–Equitable Fifth Avenue Company; Donald J. Trump; Donald J. Trump d/b/a the Trump Organization; and the Equitable Life Assurance Society of the United States, Defendant.

No. 83 Civ. 6346 (KTD).

United States District Court, S.D. New York.

Oct. 19, 1994.

Jay Goldberg, P.C., New York City (Judd Burstein, Karen A. Murphy, of counsel), for Trump defendants.

Wendy E. Sloan, New York City (Steel, Bellman, Ritz and Clark, P.C., Miriam F. Clark, Lewis M. Steel, of counsel), for plaintiffs.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This case, hoary with age, has recently been transferred to my docket. In the files, I discovered cross-motions for summary

judgment and for leave to amend the answer. In addition, defendants' move to strike plaintiff's jury demand. The summary judgment motions are in all respects denied as is the motion to amend the answer and to strike the jury demand. Questions of fact abound prohibiting the granting of summary judgment. *See generally* Fed.R.Civ.P. 56. The motion to amend the answer in this eleven year old case, if granted, would just start another round of fruitless discovery. There must be an end to all litigation; even *Jarndyce v. Jarndyce* ground down to a conclusion.

## FACTS [1]

Sometime in late 1979 or early 1980, Trump–Equitable hired defendant William Kaszycki and his company, Kaszycki & Sons Contractors, Inc. (collectively the "Kaszycki Defendants"), to demolish the Bonwit Teller building in Manhattan. *Diduck*, 774 F.Supp. at 805. The building was demolished to make way for Trump Tower. *Id.* Kaszycki had never performed a total demolition before undertaking the Bonwit Teller job, *id.*, and apparently formed the Kaszycki Corporation for this sole purpose. (Transcript of Trial (hereinafter "Tr.") at 594). Thereafter, the Kaszycki Corporation did not do any other total demolition jobs. (Tr. at 594).

Pursuant to an agreement that was signed on January 29, 1980, the Kaszycki Corporation was responsible for the labor, equipment and supplies required to demolish the building. *Diduck*, 774 F.Supp. at 805. The agreement also provided that the Kaszycki Corporation was responsible for the hiring, firing and supervision of its employees engaged in the demolition job. (Trump Defendants 3(g) Statement, ¶ 2). The Kaszycki Corporation was to be paid $775,000 for this work. *Diduck*, 774 F.Supp. at 805.

The Kaszycki Corporation employed Polish workers who were paid "off-the-books". *Id.* No records were kept, no taxes were withheld and the pay was not in accordance with the wage laws. *Id.* at 805–06. Based on these practices, Kaszycki was later found to have violated certain sections of the Fair Labor Standards Act. *See Donovan v. Kaszycki*, 599 F.Supp. 860, 864 (S.D.N.Y.1984). Donald Trump visited both the Bonwit Teller job and an adjoining job where he noted that the Polish workers were good workers. *Diduck*, 774 F.Supp. at 805.

In or around March of 1980, members of Local 95 started working on the site. *Id.* at 806. Although the Polish workers were told that they would be discharged, some continued to work until June, 1980. *Id.* At some point, the Kaszycki Corporation and Local 95 entered into a collective bargaining agreement ("CBA") that covered the period from July 1, 1978 to June 30, 1981. *Id.* at 809. The CBA required the Kaszycki Corporation to make payments to the Local 95 Insurance Fund at a rate of eight percent of the "total wages paid to workers covered" by the agreement. *Id.* at 810 (quoting from CBA ¶ 33). In addition, the CBA required contributions to the Local 95 Pension Fund at a rate of ten percent of the total wages paid to workers. *Id.* The Polish workers were doing work covered by the CBA, and thus contributions for that work were due to the Funds. *Diduck*, 974 F.2d at 274. Thomas Macari, the vice president of Trump–Equitable, was not told about the CBA until after it was signed. *Diduck*, 774 F.Supp. at 810.

In March, 1980, John Senyshyn [2] was the president of Local 95, and consequently was a trustee of both Funds. *Diduck*, 974 F.2d at 274. Senyshyn and John Osijuk were shop stewards at the demolition site. *Id.*

---

1. The underlying facts of this case have been set forth in several prior opinions. *See, e.g., Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F.Supp. 802 (S.D.N.Y.1991), *aff'd in part and rev'd in part*, 974 F.2d 270 (2d Cir.1992). Familiarity with these opinions is presumed, and only those facts necessary to put the present motions in context will be recited. The following recitation is based on the findings of fact from the sixteen day non-jury trial before the Honorable Charles E. Stewart of this Court, *see id.*, on certain deposition and trial testimony, and on those facts that are undisputed in the parties' statements pursuant to Local Rule 3(g).

2. Until he passed away, John Senyshyn had been a defendant in this action. In December, 1993, Judge Stewart granted the Plaintiffs' motion to substitute Stella Senyshyn, as the representative of the Estate of John Senyshyn, as a defendant. (Memorandum Decision, Dec. 13, 1993).

This position required them to prepare and file with Local 95 weekly reports listing all workers, hours worked and wages. *Id.* Local 95 would then compare these reports with the payroll reports submitted by the Kaszycki Corporation to insure that the proper contributions to the Funds were being made. *Id.* In the instant case, neither the Kaszycki Corporation's nor the shop stewards' reports indicated the presence of Polish workers at the demolition site. *Id.* Thus, contributions to the Funds for their work were not made. *Id.*

Macari was Trump–Equitable's manager responsible for the demolition of the building. *Diduck,* 774 F.Supp. at 808. On May 9, 1980, Macari took over control of the finances for the demolition job from Kaszycki. *Id.* at 809. A special bank account was opened for the Kaszycki Corporation that required Macari's signature for all checks and withdrawals. *Id.* The bank signature card falsely identified Macari as a vice president of Kaszycki Corporation. *Id.* This special account was established to insure that payments would be made to the union members, the Funds, taxes, insurance and sick payments. *Id.* After May 9, no Trump–Equitable payments for the demolition job were made directly to the Kaszycki Defendants; rather, these payments were only made into this special account. *Id.*

"After May 9, Macari saw to it that bills were paid, that the workers were paid, that work was done, and personally signed for deliveries. He actively participated in paying the union workers. Trump–Equitable paid the union workers' payroll and suppliers of materials for the demolition job from this special account. In addition Trump–Equitable paid bills for the demolition job directly, apart from the special account." *Id.* (citations omitted). Kaszycki testified at trial that Macari "was running the show. He was in charge of the—he was representing Mr. Trump." (Tr. at 654). Kaszycki also testified in a deposition that about midway through the demolition project "I lost control of paying. Trump Organization, they pay to everybody. They gave me no money and they were making the payroll." *Diduck v.*

*Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 915 (2d Cir.1989).

When these payments were made, "Trump–Equitable sent the Funds receipts stating that it was making the payments 'On behalf of Kaszycki & Sons Contractors, Inc.' The Funds treated the checks as payments from the Kaszycki Corporation—not from Trump–Equitable—in its records. Macari informed the Kaszycki Corporation about these payments and advised the company that Trump–Equitable would hold it responsible for them." *Diduck,* 874 F.2d at 915. No action was ever taken by Trump–Equitable against the Kaszycki Corporation, apparently because it was insolvent. In late June, 1980, Macari determined that the Polish workers were no longer needed, and they were let go. *Diduck,* 774 F.Supp. at 809.

## PRIOR PROCEEDINGS

This action was commenced in August, 1983. The complaint alleged various causes of action. Plaintiffs have been granted a default judgment against the Kaszycki Defendants. In 1984, in an unrelated action stemming from the same events that gave rise to this case, the Honorable John E. Sprizzo of this Court found that the Kaszycki Defendants had violated various provisions of the Fair Labor Standards Act. *See Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860 (S.D.N.Y.1984). Judge Sprizzo awarded the Polish workers a total of $254,523.59 in unpaid wages and overtime compensation, and the same amount as liquidated damages. *Id.* at 872. In 1988, Judge Stewart granted the Trump Defendants motion for summary judgment on what is now Plaintiffs' first cause of action. The Second Circuit reversed this decision in 1989. *Diduck,* 874 F.2d at 912.

The following year, Judge Stewart again granted the Trump Defendants' motion for summary judgment on the first cause of action, holding that the Plaintiffs' failure to comply with Rule 23.1 of the Federal Rules of Civil Procedure was not excused. *Diduck,* 774 F.Supp. at 802. Judge Stewart also permitted the Plaintiffs to amend their complaint by adding the Trump Defendants to what is now their second cause of action.

*Id.* at 807. Following the sixteen day non-jury trial, Judge Stewart found that defendant Senyshyn had breached his fiduciary duties, and that the Trump Defendants had participated in this breach and were therefore jointly and severally liable. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 774 F.Supp. 802 (S.D.N.Y.1991). Judge Stewart ruled that $325,415.84 in contributions to the Funds should have been made on behalf of the Polish workers. *Id.* at 814. Judge Stewart also specifically held that the Trump Defendants' liability was based on their participation in the fiduciary breach.

On appeal, the Second Circuit affirmed in part and reversed in part. As to the first cause of action, the Court held that the demand requirement of Rule 23.1 was excused because such a demand would have been futile. *Diduck,* 974 F.2d at 287. As a result, the first cause of action is currently before this Court. As to the second cause of action, the Court affirmed Judge Stewart's decision except as to the finding of damages. *Id.* at 279. The Court held that Senyshyn could not be liable for fund contributions owed for work done by the Polish workers before Local 95 arrived on the job. *Id.* at 277. In addition, the Court remanded to determine the causal connection between the breach of fiduciary duty and the Fund's losses. *Id.* at 279. Specifically, on remand the trial court was to determine whether Trump–Equitable—given that it had paid $68,000—would have paid an additional $325,000 in Fund contributions. *Id.* In January, 1994, the case was reassigned to this Court. On March 9, 1994, the instant motions were fully submitted.

### DISCUSSION

#### Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether any material facts are in dispute, I must draw all inferences in favor of the nonmoving party. *See Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991).

The ultimate inquiry for a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). When opposing parties cross-move for summary judgment, courts "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (citations omitted).

#### The First Cause of Action

Both sides move for summary judgment as to the first cause of action, which alleges that the Trump Defendants are liable for the contributions to the Funds pursuant to Section 515, which is enforced under 29 U.S.C. § 1132(g)(2). *Diduck,* 974 F.2d at 287.

The Plaintiffs assert that the facts found by Judge Stewart in determining that the Trump Defendants were liable for knowingly participating in a breach of fiduciary duty collaterally estop the Trump Defendants from relitigating those facts as they apply to the first cause of action. When Judge Stewart ruled in favor of the Plaintiffs' breach of fiduciary duty claim, he specifically noted: "The Trump [D]efendants are liable because we find that they knowingly participated in [Senyshyn's] breach, *not because we find they were the employer.*" *Diduck,* 774 F.Supp. at 814 (emphasis added). Furthermore, in a footnote, Judge Stewart stated: "we emphasize that the Trump [D]efendants' liability stems from our finding that they participated in the fiduciary breach. *We do not rule on the question of whether they were employers ....*" *Id.* at 814 n. 1 (emphasis added).

■ Collateral estoppel, or issue preclusion, prevents a party from "relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993) (citations omitted). While Judge Stewart made no legal conclusion that the Trump Defendants were employers as defined by Section 515, it is less certain that the findings made in reaching the breach of fiduciary claim *ipso facto* have preclusive effect as to the first claim. For a factual or legal issue to have preclusive effect, it must be identical to the issue determined in the prior proceeding. *Id.* Moreover, issues of fact bearing the same label are not identical "if the legal standards governing their resolution are significantly different." *Id.* (citations omitted).[3]

■ To be liable under Section 515, the Plaintiffs necessarily contend that the Trump Defendants should be considered an employer who is thus obligated to the Funds for the past-due contributions under the CBA.[4] The term "employer" is defined in 29 U.S.C. § 1002(5) as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan...." Most courts, however, consider the issue to be not whether a defendant fits within the ERISA definition of "employer" but rather whether such a defendant is an "employer who is obligated to make contributions to a multiemployer plan." 29 U.S.C. § 1145. *See Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir.), *cert. denied,* — U.S.

—, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993). *See also International Bd. of Painters v. George A. Kracher, Inc.,* 856 F.2d 1546, 1547–48, 1550 (D.C.Cir.1988); *Mason Tenders District Council Welfare Fund v. Dalton,* 648 F.Supp. 1309, 1318 (S.D.N.Y.1986). Generally, an employer becomes obligated to make contributions when it has signed a collective bargaining agreement.

■ Although the Trump Defendants did not sign the CBA, nonsignatories to collective bargaining agreements can be held liable pursuant to Section 515 in special circumstances. *See Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving,* 845 F.2d 23, 26 (1st Cir.1988) (piercing corporate veil permissible under Section 515); *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 388 (2d Cir.1989) (controlling corporate official who conspires to defraud benefit funds can be liable under Section 515). Courts have also held that successors may be liable under Section 515. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1327 (7th Cir.1990). *Cf. Stotter Div. of Graduate Plastics Co. v. District 65,* 991 F.2d 997, 1002 (2d Cir.1993). Moreover, in this case the Second Circuit has twice acknowledged the viability of a joint employer theory under Section 515 by permitting the Plaintiffs to maintain their cause of action. *Diduck,* 974 F.2d at 287, 291; *Diduck,* 874 F.2d at 918, 921–23.

### A. *Joint Employer*

■ The Plaintiffs contend that Trump–Equitable maintained sufficient control over the Polish workers to qualify as a joint employer with the Kaszycki Corporation, and therefore is liable for the unpaid contributions pursuant to Section 515. In a joint

---

3. The Trump Defendants' contention that Judge Sprizzo's findings in *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860 (S.D.N.Y. 1984) collaterally estop the Plaintiffs from pursuing this cause of action is misplaced. The "basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound." 18 Wright, Miller & Cooper *Federal Practice and Procedure,* § 4449. In *Donovan,* the Secretary of Labor brought an action against the Kaszycki Defendants pursuant to the Fair Labor Standards Act. Neither the Plaintiffs nor the Trump Defendants were parties to that action.

4. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

employer situation, it is assumed that the two employers are separate legal entities, but "have merely chosen to handle certain aspects of their employer-employee relationships jointly." *Clinton's Ditch Co-op Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir.1985) (citations omitted), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). Therefore, it is necessary to determine if one or both entities controlled the labor relations of certain workers. *N.L.R.B. v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1122–23 (3d Cir.1982).

Drawing all reasonable inferences against the moving Plaintiffs, it is clear that there are disputed issues of fact that prevent granting summary judgment in their favor. Genuine issues of material fact exist as to whether or not Trump–Equitable could be considered a joint employer. Accordingly, the motion for summary judgment and the cross motion are denied.

### B. *Successor Employer*

■ The Plaintiffs also contend that the Trump Defendants are liable as a successor employer. Specifically, the Plaintiffs allege that after May 9, 1980—when Macari took over control of the finances for the demolition job—Trump–Equitable essentially succeeded the Kaszycki Corporation as employers of both the Local 95 and Polish workers. As a result, the Plaintiffs contend that the Trump Defendants assumed the Kaszycki Corporation's obligations under the CBA.

While the Second Circuit has not explicitly held that a successor is liable for a predecessor's failure to make ERISA contributions, it has cited with approval to several cases that have so held. *See Stotter Div. of Graduate Plastics Co. v. District 65*, 991 F.2d 997, 1002 (2d Cir.1993). This determination is also fact specific and sufficient genuine issues of fact

are present which preclude summary judgment.

### C. *Conspiracy to Defraud*

Plaintiffs also contend that the Trump Defendants are liable under Section 515 because they "knowingly participated in a scheme to deprive the Funds of contributions due on behalf of the non-union Polish workers; they conspired with the employer (Kaszycki) and the Funds Trustee (Senyshyn) to employ the non-union Polish workers 'off-the-books' and deprive them of pension and welfare contributions owed to the Funds on their behalf." (Pl.'s Br. at 33).

The Second Circuit has acknowledged that it has not established the outer boundaries of individual liability for a corporation's ERISA obligations. *See Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993). Thus, in *Sasso*, the Second Circuit pointed out that in "special circumstances" individual liability was warranted. *Id.* at 50. These "special circumstances" included corporate officers who conspired to defraud ERISA funds as well as non-fiduciaries who participated in a fiduciary's breach of ERISA trust obligations. *Id.* at 50–51.

While *Leddy* could be read to limit the imposition of individual liability to those who are "controlling corporate officials," the case law permits a broader interpretation. *See Sasso*, 985 F.2d at 51. The legislative purpose of ERISA would not be advanced if individuals who were not controlling corporate officials but nonetheless conspired to defraud employee benefit plans could not be held liable under Section 515.[5]

### *The Second Cause of Action*

■ The Trump Defendants contend that the Plaintiffs' second cause of action is barred by the recent Supreme Court decision in *Mertens v. Hewitt Assoc.*, —— U.S. ——,

---

5. As noted by Judge Stewart, Thomas Macari was intimately involved in the Kaszycki Corporation's operations at the demolition site. Indeed, in May, 1980, Macari took over the finances of the demolition job from Kaszycki. *Diduck*, 774 F.Supp. at 809. Macari "knew the Polish workers were working 'off the books,' that they were doing demolition work, that they were non-union, that they were paid substandard wages with

no overtime pay, and that they were paid irregularly if at all." *Id.* at 812. Moreover, before authorizing Trump–Equitable to make contributions to the Funds, Macari carefully checked the list of employees on the employer's report, and knew that this report was did not accurately list all of the workers at the demolition site. *Id.* at 813.

113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). This claim alleges that the Trump Defendants, as non-fiduciaries, knowingly participated in defendant Senyshyn's breach of his fiduciary duty to the Funds.

In the instant motion, there is a genuine issue of material fact that requires a trial to determine whether the Plaintiffs are entitled to restitution from the Trump Defendants. Specifically, the trier must determine whether the Trump Defendants were unjustly enriched by benefitting from Local 95's continued labor without making contributions to the Funds for the Polish workers. Accordingly, the Trump Defendants motion for summary judgment on the second cause of action is denied.

For the reasons stated above, all motions and cross motions for summary judgment are denied.

The Trump Defendants move in the alternative to strike the Plaintiffs' demand for a jury trial on their first cause of action. The motion is hereby denied. Additionally, Defendant's motion to amend the answer is denied.

SO ORDERED.