182 F.3d 157 (2nd Cir. 1999)
 NATIONWIDE LIFE INSURANCE COMPANY, Plaintiff-Appellee-Cross-Appellant,
v.
BANKERS LEASING ASSOCIATION, INC., Defendant-Cross-Claimant-Cross-Defendant-Appellee,
HEARST/ABC VIACOM ENTERTAINMENT SERVICES, Defendant-Cross-Defendant-Cross-Claimant-Appellant.
 No. 98-7919, 98-7959
August Term 1998
 UNITED STATES COURT OF APPEALS
Second Circuit.
 Argued April 14, 1999
Decided July 01, 1999
 
 Appeal from a summary judgment of the United States District Court for the Southern District of New York. Vacated and remanded. [Copyrighted Material Omitted]
 ROBERT L. TOFEL, Tofel & Partners, P.C., New York, NY (Mark A. Lopeman, Lawrence E. Tofel, of counsel), for Defendant-Cross-Defendant-Cross-Claimant-Appellant.
 ALLAN B. TAYLOR, Day, Berry & Howard, LLP, Hartford, CT, for Plaintiff-Appellee-Cross-Appellant,
 GLENN SEIDEN, Glenn Seiden & Associates, P.C., Chicago, IL, for Defendant-Cross-Claimant-Cross-Defendant-Appellee,
 Before: VAN GRAAFEILAND, JACOBS and STRAUB, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 On this appeal, we are asked to decide whether the district court's award by summary judgment of damages in the somewhat unusual amount of $5,478,207 can withstand challenge. For the reasons that follow, we hold that it cannot.
 
 
 2
 The record on appeal is substantial -- the appendix is 2,331 pages in length. Evidence in such volume imposes burdens on a court weighing summary judgment disposition. However, even when determinative factors alone are considered, enough questions remain unanswered to preclude the grant of summary judgment.
 
 
 3
 At issue herein is a transaction commonly known as an "equipment lease." Simply defined, this is a security arrangement by which a purchaser of equipment arranges for title of the equipment to be transferred to an entity from whom the purchaser had borrowed money to effect the purchase, which then leases the equipment to the purchaser at a rental that eventually will cover the amount of the loan, at which time title may be passed to the purchaser. See, e.g., United States v. Wexler, 621 F.2d 1218, 1224 (2d Cir.), cert. denied, 449 U.S. 841 (1980); In re Sherwood Diversified Servs., Inc., 382 F. Supp. 1359, 1360-61 (S.D.N.Y. 1974).
 
 
 4
 In the instant case, the "purchaser" was a joint venture between the Hearst Corporation, Capital Cities/ABC Video Enterprises, Inc. and L.T. Holdings (a Viacom International subsidiary), identified hereafter as "Lifetime." The lender was Bankers Leasing Association, Inc. ("BLA"), a company that was in the business of providing equipment lease financing. In July 1989, Lifetime agreed with General Electric American Communications, Inc. to purchase for $19million two satellite transponders when completed and launched in 1993. Pending the completion, Lifetime was to make periodic payments totaling $12.4million, and the balance of $6.6million was to be paid shortly before the launching date. BLA agreed to fund the payment of the "bridge" or progress loans and to lease the completed transponders to Lifetime under a 10-year financing or "equipment" lease.
 
 
 5
 Thereafter, as was BLA's right under the financing agreement, it looked around for a company with money to invest which would be willing to purchase all or part of BLA's interest in the proposed lease. It found such a company in Nationwide Life Insurance Company. In September 1991, BLA and Nationwide entered into a contract in which Nationwide committed itself to purchase BLA's entire interest in the $19million equipment lease and BLA committed itself to assign that interest.
 
 
 6
 Because these commitments covered only the proposed 1993 lease, BLA continued to make the progress payments on Lifetime's behalf. Each of these payments was to be accompanied by a promissory note from Lifetime which evidenced Lifetime's total obligation to BLA for payments made to date. There is disagreement as to which was to come first -- the payment or the note. In any event, Lifetime failed to sign a note for the progress payment due in March 1992 and BLA failed thereafter to make any more progress payments. Citing these non-payments, Lifetime refused to proceed further with its agreement with BLA, including that portion applicable to the equipment lease. This lawsuit from Nationwide based upon alleged loss of income followed and resulted in the summary judgment award in favor of Nationwide and against Lifetime.
 
 
 7
 In this decision, we hold only that the summary award in favor of Nationwide should not have been made and that, as a result, disposition of the various cross-claims that were interposed must await the retrial of Nationwide's action that we now direct.
 
 DISCUSSION
 
 8
 Perhaps the best place to begin our discussion is to quote the law governing summary judgments as it has been stated by this Court on numerous occasions.
 
 
 9
 A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.
 
 
 10
 Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)(citations omitted).
 
 
 11
 We have long recognized that summary judgment is a "drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact. Moreover, in reviewing a Rule 56 motion, a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial.
 
 
 12
 Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985), cert. denied, 484 U.S. 918 (1987) (citations omitted).
 
 
 13
 The cases hold also, that in ruling on a motion for summary judgment, all doubts as to the existence of a "genuine issue as to any material fact" must be resolved against the moving party. The District Court must therefore take that view of the evidence most favorable to the opponent of the moving party, giving the opponent the benefit of all favorable inferences that may reasonably be drawn. "If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits. This admonition should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions. The case cannot be taken from the trier of facts simply because "the lawyers for the respective parties, by the cross-motions, superinduced the idea that no factual questions were involved."
 
 
 14
 Empire Elecs. Co. v. United States, 311 F.2d 175, 180 (2d Cir. 1962) (citations omitted).
 
 
 15
 These general principles governing summary disposition of factual issues are squarely applicable to the issue of the existence and scope of an agency relationship. See Cabrera v. Jakabovitz, 24 F.3d 372, 386 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Cavic v. Grand Bahama Dev. Co. Ltd., 701 F.2d 879, 887 n.4 (11th Cir. 1983); Hedeman v. Fairbanks, Morse & Co., 286 N.Y. 240, 251-52 (1941); Lind v. Schenley Indus., Inc., 278 F.2d 79, 84 (3d Cir.), cert. denied, 364 U.S. 835 (1960). We emphasize these well established principles because of the district court's holding that when BLA arranged for Nationwide to purchase BLA's interest in the equipment lease, it was acting as Lifetime's agent, thus binding Lifetime to the lease commitment. It might well be argued that when BLA secured Nationwide's commitment to purchase BLA's interest in the equipment lease agreement, it was doing simply what the lease agreement authorized and permitted it to do, i.e., to sell its interest in the agreement, presumably at an anticipated profit. There is ample authority for the proposition that the lease agreement and the sale thereunder should be read together. See Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 53 (2d Cir. 1993); Carvel Corp. v. Diversified Management Group, 930 F.2d 228, 233 (2d Cir. 1991). In sum, we cannot agree that, as a matter of law, BLA was acting as Lifetime's agent when it entered into the commitment agreement with Nationwide so as to bind Lifetime to borrow $19 million from Nationwide. Moreover, we cannot agree that, as a matter of law, Lifetime can be held to have ratified conduct by BLA supposedly aimed at imposing upon Lifetime the commitment to borrow. See Breen Air Freight, Ltd. v. Air Cargo, Inc., 470 F.2d 767, 773 (2d Cir. 1972), cert. denied, 411 U.S. 932 (1973); Rapoport v. Universal Pictures Corp., 232 A.D. 529, 530 (1st Dep't 1931).
 
 
 16
 Nationwide emphasizes the fact that BLA sought fixed rate financing for the transponders at the urging of Lifetime, which in turn was acting at the behest of another lender demanding an end to the uncertainty caused by Lifetime's variable rate loan commitment. There is force to Nationwide's argument that Lifetime benefitted from the fixing of the rate. At the same time, we are unpersuaded that those negotiations as a matter of law transformed the sale of a leasehold into a direct loan obligation.
 
 
 17
 Although there are several other areas of disagreement between the parties which militate against the grant of summary judgment, we see no need to address them here. They will receive the careful attention of the district court upon the retrial that we now direct.
 
 
 18
 The judgment below is vacated in its entirety. The principal action and all the related cross-claims are remanded to the district court for further proceedings in accordance with this opinion.