Brian WALKER, Plaintiff,

v.

**Sheila VAUGHAN, Warden of George R. Vierno Center, John Doe, Dept. of Security of George R. Vierno Center, Joseph Stankovic, Warden of Riker's Island Security, Michael Gray, Warden of Transportation Division, David Schoenfeld, Warden of George R. Vierno Center, Angela Manzi, Dept. of Security of George R. Vierno Center, M. Rodriguez, Captain # 126 of George R. Vierno Center, Michael P. Jacobson, Commissioner of NYC Dept. of Corrections, Rudolph W. Guiliani, Mayor of the City of New York, Defendants.**

No. 98Civ.2662(RMB)(JCF).

United States District Court,
S.D. New York.

Aug. 15, 2002.

*DECISION AND ORDER*

BERMAN, District Judge.

## I. Background

*Pro se* Plaintiff Brian Walker ("Plaintiff" or "Walker") commenced this action on or about January 21, 1998, pursuant to 42 U.S.C. § 1983. Plaintiff alleges, *inter alia*, that Defendants violated his Eighth and Fourteenth Amendment rights while he was incarcerated at the George R. Vierno Center ("G.R.V.C.") on Riker's Island, New York by: 1) failing to protect him from an attack by other prisoners in a February 11, 1996 shooting incident; 2) employing excessive force against him on October 14, 1997; and 3) transferring him involuntarily, i.e., without due process, to another facility. Second Am. Compl. ¶¶ 2–4, 15–19, 23–28, 31–33, 36, 41. On or about February 7, 2002, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Defs.' Summ. J. Mot.") on Plaintiff's failure to protect and due process claims (but not on his excessive force claim). United States Magistrate Judge James C. Francis IV, to whom the matter had been referred, issued a report and recommendation on July 15, 2002 ("Report"), recommending that "defendants' motion for summary judgment be granted and the failure to protect and due process claims be dismissed." Report at 14. Plaintiff submitted objections to Judge Francis's Report on July 22, 2002 ("Pl.'s Objections"). **For the reasons set forth below, the Court adopts the Report in its entirety and grants Defendants' motion for summary judgment.**

## II. Standard of Review

When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erro-

neous. *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). Once timely objections are received, the court may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. Fed. R.Civ.P. 72(b); *e.g., DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994). The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (2002); *see N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 79, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). However, "[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Barratt v. Joie,* No. 96 Civ. 0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted); *accord Azumendi v. Roth,* No. 99 Civ. 3663, 2002 WL 441283, at *1 (S.D.N.Y. Mar.20, 2002). Where, as here, the petitioner is *pro se,* "leniency is generally accorded." *Vasquez v. Reynolds,* No. 00 Civ. 0862, 2002 WL 417183 at *5 (S.D.N.Y. Mar.18, 2002) (citation omitted).

Summary Judgment is appropriate when the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the motion, the court must draw all factual inferences in favor of the nonmoving party, *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n,* 182 F.3d 157, 160 (2d Cir.1999),

and inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets its burden, the opposing party must then demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

## III. Analysis

The Court has conducted a *de novo* review of the record herein, including, among other things, the parties' summary judgment submissions, the Report, Plaintiff's Objections, as well as relevant legal authority. The Court finds that the Report is in conformity with the law, is not clearly erroneous, and is supported by the record.

### A. Plaintiff's Eighth Amendment Failure to Protect Claim

■ Judge Francis's Report concludes that "plaintiff is collaterally estopped by his fraud conviction" from pursuing his failure to protect claim. Report at 9. On September 30, 1999, in *United States v. Walker,* No. 99 CR 397(BSJ), Plaintiff was convicted of violating 26 U.S.C. § 5861(d), unlawful possession of a firearm, and 18 U.S.C. § 1341, mail fraud, in connection with an incident in which Walker asked a fellow inmate to shoot him in the arm with an unregistered zip gun that he had illegally acquired. *United States v. Walker,* No. 00–1624, 2001 WL 1485768, at *1 (2d Cir. Nov.20, 2001). In his Objections to the Report, Plaintiff contends that collateral estoppel does not apply to his failure to protect claim because he did not have a full and fair opportunity to litigate the issue in the criminal matter.[1] Pl.'s Objec-

---

1. However, in his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n Summ. J."), Walker concedes, "Plaintiff's federal civil rights action and the federal court criminal prosecution and conviction of the plaintiff were based only on the facts and circumstances of the February 11, 1996 incident."

tions at 5. Walker asserts that "[t]he fact that 'staff' had identified four inmates and removed these inmates from the area as 'suspected perpetrators' ... was not presented as evidence for the jury." *Id.* at 4–5. Apart from the fact that Plaintiff fails to recount where or how he discovered this information, "District Courts are on particularly firm footing when rejecting supplemental evidence from a party that fails to explain why [as here] the evidence was not presented to the Magistrate Judge." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A,* 191 F.Supp.2d 404, 407 (S.D.N.Y.2002) (citing *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994); *Pan Am. World Airways, Inc. v. Int'l Bhd. Of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir. 1990)). The Court is exercising its discretion to reject information not presented to Magistrate Francis.

■ Moreover, collateral estoppel forecloses a second litigation where, as here: "(1) the issues in both proceedings [are] identical, (2) the issue in the prior proceeding [was] actually litigated and actually decided, (3) there [was] a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated [was] necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 (2d Cir.1986). In the instant case, Plaintiff's failure to protect claim "was previously litigated in federal court, where the jury rejected the plaintiff's claim that he was attacked by other inmates and instead convicted him [beyond a reasonable doubt] of staging his own shooting in order to commit fraud upon the defendants by filing false legal claims." Report at 10 (citing *Walker,* 2001 WL 1485768, at *4); *see* Defs.' Summ. J. Mot. at 8–10. The Court of Appeals for the Second Circuit has already rejected Walker's argument, finding it "to be without merit." *Walker,* 2001 WL

1485768, at *4; *see id.* at *2. In addition, "the Government had substantial evidence of Walker's guilt;" it is therefore "improbable" that "the result would have been different." *Walker,* 2001 WL 1485768, at *2 (citing *United States v. Simmons,* 923 F.2d 934, 956 (2d. Cir.1991) ("[G]iven the plethora of evidence against [Walker], there is little reason to believe that alternative counsel would have fared better.")).

### B. Plaintiff's Due Process Claim

■ Plaintiff alleges that his due process rights were violated when he was transferred involuntarily to the general population of the G.R.V.C. facility after the February 1996 shooting incident. Second Am. Compl. ¶¶ 26–28; *see* Pl.'s Objections at 5–6. Judge Francis's Report notes correctly that "[u]nder the Prison Reform Act (the 'PLRA'), '[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**'" Report at 11 (emphasis and first alteration added) (quoting 42 U.S.C. § 1997e(a) (2002)); *see Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Plaintiff has failed to exhaust his administrative remedies. Plaintiff's Objections address neither Judge Francis's conclusion nor the PLRA's exhaustion requirement; rather, Plaintiff reasserts generally that he was "releas[ed] involuntarily ... without [a] due process hearing." Pl. Objections at 5–6 (citing Second Am. Compl. ¶¶ 26, 27); *see* Pl.'s Opp'n Summ. J. at 3, 4; *see also Barratt,* 2002 WL 335014, at *1.

"Riker's Island, like all New York correctional facilities, provides administrative

Pl.'s Opp'n Summ. J. at 6; *see id.* at 4, Defs.' Reply at 3.

remedies through an inmate grievance program." Report at 11–12 (citing Directive # 3375R, entitled, "Inmate Grievance Resolution Program"). The record reflects that Walker did not file a grievance during his incarceration. *Id.* at 12 (citing Harris Aff. ¶¶ 3–6). Plaintiff's assertions to the contrary are "completely unsupported and therefore insufficient to preclude summary judgment." *Id.; see Matsushita Elec. Indus.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see also Bianco v. Shalala,* No. 93 Civ. 5931, 1994 WL 455519, at *1 (S.D.N.Y. Aug.22, 1994).

## IV. Order

The Court incorporates Magistrate Francis's Report [40] by reference, and, for the reasons therein and herein, grants Defendants' motion for summary judgment with respect to Plaintiff's failure to protect and due process claims. Counsel are directed forthwith to contact Court Deputy Christine Murray (at (212) 805–6715) to arrange a status/scheduling phone conference with the Court. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

## *REPORT AND RECOMMENDATION*

FRANCIS, United States Magistrate Judge.

Brian Walker, a prison inmate, brings this action *pro se* pursuant to 42 U.S.C. § 1983. Mr. Walker alleges that the defendants failed to protect him from an attack by other prisoners and that a correction officer used excessive force against him, thereby violating his Eighth Amendment rights. He also alleges that his Fourteenth Amendment due process rights were violated when he was involuntarily transferred to another facility. Primarily,

these claims stem from two particular events: a shooting incident on February 11, 1996 (the "shooting incident"), and an alleged use of excessive force on October 14, 1997 (the "excessive force incident"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants have moved for summary judgment on the failure to protect and due process claims, but not on the excessive force claim. For the reasons set forth below, I recommend that the motion be granted.

### Background

#### A. Eighth Amendment Claims

##### 1. Facts Relevant to the Failure to Protect Claim

On February 11, 1996, the plaintiff was watching the 10:00 p.m. news in a day room at the George R. Vierno Center ("G.R.V.C.") on Riker's Island. During a commercial break, Mr. Walker claims he was "assaulted with a firearm weapon by one, of three Hispanic inmates." (Second Amended Complaint ("Second Am. Compl."), ¶¶ 2–4). As a result of this alleged altercation, the plaintiff received a gunshot wound to his right upper arm. ("Emergency Department Patient Discharge Instructions," attached as Exh. A to Second Am. Compl.). The plaintiff claims this was an unprovoked attack, and that he defended himself from what he "thought was a stabbing attack" by the Hispanic inmates. (Second Am. Compl., ¶ 5). The plaintiff also maintains that the defendants' level of security was "obviously deficient and this inadequacy resulted [in] inmates having a firearm weapon to shoot the plaintiff." (Second Am. Compl., ¶ 17). He characterizes the shooting incident as a violation of his "Constitutional Rights [sic] to be free from such assaults at the hands of other inmates." (Second Am. Compl., ¶ 15).

The defendants maintain that the plaintiff actually arranged his own shooting in order to defraud the City. (Defendants' Reply Memorandum of Law in Support of their Motion for Summary Judgment ("Def. Reply Memo.") at 3–4). The plaintiff was, in fact, indicted on July 29, 1999, for violation of 26 U.S.C. § 5861(d), Unlawful Possession of a Firearm, and 18 U.S.C. § 1341, Mail Fraud, both in connection with the February 11, 1996, shooting incident. (Indictment, attached as Exh. G to Defendants' Notice of Motion). Specifically, Count Two of the indictment charged the plaintiff with:

[U]nlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud ... the civil defendants of millions of dollars, based on the false and fraudulent claim that the civil defendants failed to protect WALKER from being shot while incarcerated at Riker's Island Correctional Facility, when in fact WALKER had planned, orchestrated, and caused himself to be shot by another inmate, using an illegal "zip gun" provided by WALKER, to effect WALKER's fraudulent scheme.

(Indictment at 1–2). The plaintiff was convicted of both counts on September 30, 1999, and the decision was affirmed on November 20, 2001, by the United States Court of Appeals for the Second Circuit. *United States v. Walker*, No. 00–1624, 2001 WL 1485768, at *4 (2d Cir. Nov.20, 2001). Surprisingly, he persists with his failure to protect claim. (Second Am. Compl., ¶ 11).

The facts surrounding the shooting incident are of particular relevance. While incarcerated at Riker's Island in 1996, the plaintiff illegally acquired an unregistered zip gun. *See Walker*, 2001 WL 1485768, at *1. On February 11, he handed the zip gun to a fellow inmate and requested that he shoot him in the underside of his right arm. *Id.* Soon after the inmate shot him, the plaintiff punched a nearby Hispanic inmate twice in the face. *Id.* When the fight was broken up, Mr. Walker claimed that he only punched the Hispanic inmate because he felt as if he had been shot. *Id.* Approximately a week later, Mr. Walker initiated this lawsuit against the City of New York for $30 million in damages, alleging that Department of Correction ("DOC") officers negligently failed to prevent the attack on him. *Id.*

### 2. *Facts Relevant to the Excessive Force Claim*

Mr. Walker also alleges that his Eighth Amendment rights were violated on October 14, 1997. At approximately 7:00 p.m., he was approached and questioned by Captain M. Rodriguez. (Second Am. Compl., ¶ 30). Mr. Walker claims that when he refused to answer questions about the shooting incident, he was "maliciously assaulted" by Captain Rodriguez and several other officers. (Second Am. Compl., ¶¶ 31–32). Mr. Walker claims that Captain Rodriguez acted with "malicious and sadistic intent to cause plaintiff severe physical harm [and deprive him] of rights secured by the 8th Constitutional Amendment." (Second Am. Compl., ¶ 33).

The defendants, while denying Mr. Walker's allegations, concede that "material issues of fact exist that preclude summary judgment ... and, therefore, that this claim will proceed with discovery." (Def. Reply Memo. at 2 n.2). As a result, they do not argue for summary judgment regarding the excessive force incident.

### B. *Due Process Claim*

Mr. Walker also alleges that his Fourteenth Amendment due process rights were violated when he was involuntarily transferred to the G.R.V.C. In September 1997, the plaintiff, then a state prisoner, was temporarily entrusted to the custody of the New York City Department of Cor-

rection. (Def. Reply Memo. at 3). At this time, the plaintiff was designated as a Centrally Monitored Case due to the shooting incident. (Department of Correction Internal Memorandum, dated Oct. 17, 1997 ("DOC Memo."), at 1, attached as Exh. A to Declaration of Susan M. Halatyn dated April 19, 2002 ("Halatyn Decl.")). As a result, he was placed in the Contagious Disease Unit of the West Facility ("C.D.U."). On September 24, 1997, Mr. Walker, against his wishes, was transferred from the C.D.U. to the general population at the G.R.V.C. (Def. Reply Memo. at 4). Mr. Walker alleges that this transfer displayed a callous indifference to his safety because he had received "gunshot injuries in that very facility" a year before. (Second Am. Compl., ¶ 23).

Though Mr. Walker characterizes his transfer to the G.R.V.C. as a violation of his due process rights, he did not file a formal grievance. (Affidavit of Arthur Harris in Support of Defendants' Motion to Dismiss dated April 16, 2002 ("Harris Aff."), ¶¶ 3–6, attached as Exh. C to Halatyn Decl.). After the excessive force incident of October 14, 1997, he was again transferred, this time to the Anna M. Kross Center ("A.M.K.C."). (DOC Memo. at 2). On October 29, 1997, he was released from the New York City Department of Correction system to a state facility. (Harris Aff., ¶ 4).

*Discussion*

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Andy Warhol Foundation For the Visual Arts, Inc. v.*

*Federal Insurance Co.,* 189 F.3d 208, 214 (2d Cir.1999); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party meets that burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249–50, 106 S.Ct. 2505.

Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment. A *pro se* party's "bald assertion," unsupported by evidence, is not sufficient

to overcome a motion for summary judgment. *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)); *see also Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y. 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("The work product of *pro se* litigants should be generously and liberally construed, but [the litigant's] failure to allege either specific facts or particular laws that have been violated, renders his attempt to oppose defendants' motion ineffectual."); *Stinson v. Sheriff's Department of Sullivan County,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

### B. *Failure to Protect Claim*

Although the Eighth Amendment provides that prison officials have a duty to protect inmates from violence at the hands of other prisoners, not every injury caused by one prisoner to another gives rise to constitutional liability. *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An official may be liable under the Eighth Amendment only if he exhibited "deliberate indifference" towards the rights of the inmate. A prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970).

In the instant case, the plaintiff is collaterally estopped by his fraud conviction from establishing either that the correction officers had knowledge or that they disregarded any risk. The finding in the prior case that Mr. Walker was responsible for orchestrating his own shooting precludes him from asserting that he faced a substantial risk of harm from his supposed assailants. Similarly, correction officers had no reason to believe the plaintiff was in any such danger.

The doctrine of collateral estoppel serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This doctrine is fully applicable to civil rights claims asserted under 42 U.S.C. § 1983. *See Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

The law of collateral estoppel forecloses a second litigation of an issue if: (1) the issue was actually litigated; (2) there was a final determination on the merits of that issue in the prior proceeding which was necessary to that judgment; and (3) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992); *Elliott Associates, L.P. v. Republic of Panama,* 975 F.Supp. 332, 336 (S.D.N.Y.1997); *Hardy v. Kaszycki & Sons Contractors, Inc.,* 870 F.Supp. 489, 494 (S.D.N.Y.1994).

Mr. Walker claims that his Eighth Amendment rights were violated because the defendants failed to protect him from the shooting by other inmates. (Second Am. Compl., ¶ 15). This issue, however, was previously litigated in federal court, where the jury rejected the plaintiff's claim that he was attacked by other inmates and instead convicted him of staging his own shooting in order to commit fraud upon the defendants by filing false legal claims. *See Walker,* 2001 WL 1485768, at

*4. Since the plaintiff was a party to both cases, it is appropriate to invoke issue preclusion against any failure to protect claim related to the shooting. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. 645; *Blonder–Tonque Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Accordingly, this claim should be dismissed.

### C. *Due Process Claim*

In response to Mr. Walker's assertion that his due process rights were violated upon transfer to the G.R.V.C., the defendants argue that the plaintiff has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Parkinson v. Goord*, 116 F.Supp.2d 390, 393–94 (W.D.N.Y.2000). Furthermore, the Supreme Court recently held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, ——, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002) (citation omitted). Therefore, a prisoner must first exhaust all administrative remedies before a court can adjudicate his claims.

Mr. Walker has failed to do so. He simply makes the bald assertion that "[t]here is *no* grievance procedure in the City of New York, Corrections Department." (Second Am. Compl., at 2) (emphasis in original). This is incorrect. Riker's Island, like all New York correctional facilities, provides administrative remedies through an inmate grievance program. (Directive #3375R, entitled "Inmate Grievance Resolution Program"). The grievance program has five levels of review. The process begins with a filing of a grievance with the Inmate Grievance Resolution Committee ("IGRC"). If the grievance is not informally resolved, the inmate may request a formal hearing before the IGRC. After the IGRC issues a recommendation, that decision may be appealed to the warden. If the inmate is still unsatisfied, the warden's decision may be appealed to the Central Office Review Committee. And finally, the Central Office Review Committee's decision can be appealed to the Board of Correction. (Directive #3375R at 7–8). A thorough search of all records of both the G.R.V.C. and the A.M.K.C. revealed that no grievance of any type was filed by Mr. Walker during his incarceration. (Harris Aff., ¶¶ 3–6).

Mr. Walker's conclusory statement that no grievance program exists is completely unsupported and therefore insufficient to preclude summary judgment. "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.1997) (internal quotations and citations omitted); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"); *Howard Johnson International, Inc. v. HBS Family, Inc.*, No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D.N.Y. July 22, 1998). Mr. Walker has not profered any evidence to contest

the existence and the availability of an administrative grievance procedure.

Nor does the fact that Mr. Walker seeks only money damages excuse him from the PLRA's exhaustion requirement. In the past, courts were split over whether the PLRA's exhaustion requirement applies when a prisoner seeks monetary damages and the available administrative remedies make no provision for such relief. In *Booth v. Churner*, 532 U.S. 731, 740, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), however, the Supreme Court held that the administrative exhaustion requirement applies regardless of the type of remedy sought by the plaintiff.

Accordingly, the plaintiff has not satisfied the PLRA's exhaustion requirement, and the defendants are therefore entitled to summary judgment on Mr. Walker's due process claims.

*Conclusion*

For the reasons set forth above, I recommend that the defendants' motion for summary judgment be granted and the failure to protect and due process claims be dismissed. The excessive force claim, however, remains to be tried. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 201, 40 Foley Square, New York, New York 10007 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

July 15, 2002.