Lawrence DAVIS, Plaintiff,

v.

**THE CITY OF NEW YORK,**
**et al., Defendants,**

**No. 99 CIV. 1416(LAK).**

United States District Court,
S.D. New York.

April 19, 2001.

Lawrence Davis, Mount Vernon, NY, pro se.

Steven C. Stern, Assistant Corporation Counsel, Michael D. Hess, Corporation Counsel of the City of New York, New York, NY, for Defendants.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

Plaintiff, a former inmate at Riker's Island, brings this Section 1983 action against the City of New York, former Corrections Commissioner Bernard Kerik, and a number of "John Does" in an effort to recover damages allegedly suffered when he was kept in medical isolation for a seven-day period in June 1998 after refusing to give a blood sample at an initial medical screening. He complains that the defendants' actions violated his rights under the Fourth, Sixth, Eighth and Fourteenth Amendments. Charitably read, moreover, his *pro se* complaint arguably asserts that his First Amendment right to the free exercise of religion was violated because (1) he was placed in isolation despite the fact that his refusal to give blood was based on his religious beliefs, and (2) prison officials failed to provide him with the vegetarian diet perhaps required by his religion. Defendants have moved for

summary judgment dismissing the complaint following the close of discovery.

In a thorough report and recommendation ("R & R"), Magistrate Judge Frank Maas has recommended that the defendants' motion be granted in all respects save as to the First Amendment claims against the City. The City objects to the R & R insofar as it recommends the partial denial of its motion. Plaintiff objects to the R & R insofar as it recommends dismissing his claims against Commissioner Kerik and the John Does, as well as his claims against the City under the Fourth, Sixth, Eighth and Fourteenth Amendments.

The Court has read and considered plaintiff's objections. Nevertheless, for the reasons stated in Judge Maas' R & R, plaintiff's claims fail under the Fourth, Sixth, Eighth and Fourteenth Amendment. The Court proceeds to consider the City's objections.

*Medical Isolation*

Plaintiff's contention with respect to the medical isolation imposed in consequence of his arguably religious-based refusal to give a blood sample is not that he was forced to give a sample—he was not—and not that he was *placed* in isolation. Indeed, the record is quite clear that plaintiff refused to give the blood sample out of an affirmative desire to be placed in isolation in order to avoid being put in the "dangerous environment" of the general population.[1] As plaintiff aptly put it, he decided to go into medical isolation "to protect [him]self and to safeguard [him]self."[2] His grievance is that the *conditions* of medical isolation were inappropriate—that his access to a telephone and showers was limited and that he was kept under 24 hour keep-lock.[3] Although plaintiff did not state a First Amendment claim in his complaint, Judge Maas inferred such a claim based on plaintiff's purported religious objections to the blood test.

While inmates "clearly retain protections afforded by the First Amendment, including [the right to] free exercise of religion,"[4] a prison regulation that inadvertently impinges on prisoners' constitutional rights nevertheless is valid "if it is reasonably related to legitimate penological interests"[5] such as "deterrence of crime, rehabilitation of prisoners, and institutional security."[6] The regulation at issue here is two-fold. It requires that prisoners submit to a blood test, and it mandates at most a two-week period of "medical isolation" should a prisoner refuse to submit to the test. Conducting blood tests to screen for communicable diseases is reasonably related to the City's interest in institutional security and the safety and health of the prison population. In addition, requiring medical isolation for a period of no more than two weeks, during which time a medical examination is conducted, is reasonably related to the City's interest in controlling the spread of communicable disease within prisons.

---

1. Davis Dep., 10/13/99, at 218, 226–27; Davis Dep., 11/3/99, at 4–6.

2. Davis Dep., 11/3/99, at 4.

3. *Id.* at 5–6.

4. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 347, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (internal citations omitted).

5. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

6. *O'Lone*, 482 U.S. at 347, 107 S.Ct. 2400 (citing *Pell v. Procunier*, 417 U.S. 817, 822–23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)).

Judge Maas, however, recommended denial of summary judgment on the medical isolation issue in part due to the absence of evidence (1) "as to why Davis was confined to his cell around the clock for seven consecutive days when Policy # 3–26 itself seems to contemplate somewhat less restrictive conditions of medical isolation," and (2) "why Davis was apparently permitted to have physical and respirational contact with other inmates while he was in medical isolation." [7] The Court considers these reasons in reverse order.

■ The second stated reason for Judge Maas's recommendation amounted to a question as to whether the prison regulation was reasonably related to a legitimate penological interest. Judge Maas relied principally on *Reynolds v. Goord,* [8] which dealt with the State's practice of placing inmates who refused PPD tests for tuberculosis exposure in "tuberculin hold" for an entire year. In the course of finding that plaintiff displayed a likelihood of successfully showing that this practice violated the First Amendment rights of prisoners who refused to submit to the PPD test for religious reasons, Judge Cote concluded that the State had failed to show the inadequacy of alternative means that accommodated the interest of the prisoners, such as medical isolation for a sufficient period to permit a chest x-ray and an appropriate physical assessment. [9]

Yet the alternative suggested by Judge Cote is substantially what the City Department of Corrections did here. Its guidelines call for placement in medical isolation for a period not to exceed two weeks during which a comprehensive medical examination is performed. [10] That the City chose not to incur the added cost and burden of placing plaintiff in absolute physical and respirational isolation does not mean that the isolation it did impose was unrelated to securing the health and safety of the prison population. Certainly the logical connection between a limited medical isolation and the Department of Corrections' interest in insuring the health and safety of prisoners is not "so remote as to render the policy arbitrary or irrational." [11] Accordingly, the brief placement of plaintiff in medical isolation without complete respirational and physical isolation in order to restrict his exposure to the general population and facilitate a medical examination in consequence of his refusal to submit a blood sample did not violate any First Amendment rights because it served legitimate penological interests with minimal intrusion on plaintiff.

■ Judge Maas's first stated reason for recommending denial of summary judgment raises the issues of whether the medical isolation imposed on plaintiff was more severe and pervasive in scope than appropriate to achieve the City's penologi-

---

7. R & R at 17.

8. 103 F.Supp.2d 316 (S.D.N.Y.2000).

9. *Id.* at 342.

10. Def. Ex. H.

11. *Turner,* 482 U.S. at 89–90, 107 S.Ct. 2254. The reasons advanced for this standard are that it commits "evaluation of penological objectives ... to the considered judgment of prison administrators 'who are actually charged with and trained in the running of the particular institution under examina-

tion,' " *O'Lone,* 482 U.S. at 349, 107 S.Ct. 2400 (quoting *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)) and "avoids the unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.' " *Id.* (quoting *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)). Keeping these purposes in mind, the Court declines to find that the City Department of Corrections must take an "all or nothing" approach to medical isolation in this instance.

cal goals.[12] While it is true that the restrictions imposed need only be rationally related to a legitimate penological interest, restrictions cannot be overreaching, at least if there are adequate alternative means of serving the City's interest while also accommodating prisoners' religious beliefs.[13] Plaintiff did not have a protected right to be free from medical isolation when he refused on religious grounds to submit to a blood test, but he may have had a protected right to be free from the heightened restrictions he alleges—continuous keep-lock and limited access to phones and showers—if those restrictions were not rationally related to the Department of Corrections' legitimate interests or there were alternatives that would better have accommodated prisoners with religious objections to blood testing. Yet the City has failed to make any showing regarding the legitimacy or rationality of the alleged restrictions on showers and access to telephones and the extensive keeplock, and thus has failed to meet its burden on this issue.[14]

■ The City argues, however, that plaintiff has failed to allege or offer evidence to establish that the alleged violation of plaintiff's First Amendment right occurred pursuant to a municipal policy, as required under 42 U.S.C. § 1983.[15] Judge Maas construed plaintiff's complaint to incorporate this element of his Section 1983 claim.[16] But the City does not specifically deny that the alleged restrictions on shower and telephone access and the imposition of keeplock on those in medical isolation reflect City policy.[17] Rather, it seeks judgment based on the absence of evidence indicating that the alleged restrictions customarily were imposed upon religious objectors. It points out that the only evidence plaintiff has put forth on this issue is his unsupported allegation that there was

12. The City denies plaintiff's allegations, but correctly notes that for the purposes of summary judgment, these allegations must be presumed true. *See* Def. 56.1 St. ¶ 7.

13. *See Nicholas v. Miller,* 189 F.3d 191, 194 (2d Cir.1999) (once court has determined that regulation is rationally related to legitimate state interest, "[t]he court must then consider whether there are alternative means of exercising the proscribed right, the impact that accommodating the right will have on other inmates, on prison guards, and on the allocation of prison resources generally, and the availability of ready alternatives to the regulation").

14. Once plaintiff has made a *prima facie* showing that his free exercise right has been impinged, the City bears the burden at trial of proving the rationality of the alleged restrictions, the legitimacy of its penological goals, and the absence of available alternatives. Accordingly, in order to meet its summary judgment burden the City must come forward with admissible evidence sufficient to sustain its burden of going forward and establish the lack of any genuine issue of material fact. The City has failed to do so.

15. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such a policy need not be contained in a rule or regulation, so long as it is sufficiently established to rise to the level of "custom or usage with the force of law."*Id.* at 691, 98 S.Ct. 2018. "A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). Conversely, evidence that the City has acted in a similar way towards other inmates—thus displaying a pattern of allegedly unconstitutional behavior— would tend to indicate that such behavior was officially sanctioned. *See Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 870–73 (2d Cir.1992).

16. R & R at 13.

17. The City denies plaintiff was subjected to the alleged restrictions, *see* Def. 56.1 St. ¶ 7, but has not asserted that the restrictions, if imposed, did not reflect a municipal policy.

another individual placed in medical isolation in circumstances similar to plaintiff's and that this individual had refused a blood test. The City notes that plaintiff has not been able to locate this individual and in any case that plaintiff does not allege that the individual refused a blood test on religious grounds.[18] It argues that plaintiff therefore has produced insufficient evidence to support a *Monell* claim.

On a motion for summary judgment, the City as the movant "bears the initial responsibility of informing the district court of the basis for its motion" and identifying materials in the record that "it believes demonstrate the absence of a genuine issue of material fact."[19] Where, as here, "the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case."[20] Under *Celotex*, the movant may meet this burden solely by relying on the "pleadings, depositions, answers to interrogatories, and admissions on file," and need not file an affidavit specifically negating the non-movant's claims.[21] Nevertheless, as Justice White pointed out in his concurrence in *Celotex*, these guidelines should not be taken out of context. "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."[22]

In *Celotex*, a products liability and wrongful death action, the corporate defendant moved for summary judgment on the ground that the plaintiff had put forth no evidence that her decedent had been exposed to the defendant's asbestos products, as opposed to the asbestos products of its fourteen co-defendants. But neither plaintiff nor the defendant was in a position to produce competent evidence on the exposure issue. Here, on the other hand, the City is in the unique position of knowing whether the actions plaintiff alleges, if they occurred, took place pursuant to a municipal policy or practice. The City could have denied the existence of a municipal policy in its answer, in its statement of undisputed facts, in an affidavit, or even in its brief. Instead, the City takes no position on the existence of a policy or practice and argues only that plaintiff does not have the evidence to prove it. This failure to deny a material allegation, the accuracy of which is within the City's

---

18. *See* Def. Mem. at 5–6. Plaintiff requested information on this individual during the course of discovery, *see* Def. 9/29/99 letter, and Judge Maas ordered the City to comply with plaintiff's request. *See* 10/2/99 Order. It is undisputed that plaintiff could not locate this individual, *see* Def. Mem. at 5 n. 1; Pl. Aff. at ¶ 12.

19. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

20. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548); *see also Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987) (movant may meet initial burden "simply [by] pointing out that the plaintiff has failed to present any

evidence to establish a necessary element of the cause of action").

21. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. *See also* 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000) ("The burden of production . . . does not mandate that the movant create additional materials such as affidavits which demonstrate the absence of a genuine issue of fact. If the movant does not bear the ultimate burden of persuasion on a particular claim at trial, it may satisfy its initial burden by pointing out that the record lacks substantial evidence to support a necessary element of the nonmovant's claim.").

22. *See Celotex*, 477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring).

knowledge, arguably permits the inference that the City has not denied the allegation because it cannot truthfully do so.

■ This point is well illustrated by a simple analogy. In a claim by a plaintiff on a promissary note allegedly signed by the defendant, could the defendant, without denying that he signed the note, obtain summary judgment on the ground that the plaintiff could not authenticate the maker's signature as that of the defendant and thus had no evidence supporting his claim? Such an outcome would pervert the purpose of Rule 56 which, as *Celotex* reminds us, is "to isolate and dispose of factually unsupported claims or defenses." [23] "Factually unsupported" claims or defenses cannot include those for which factual support may exist, but is unavailable to the non-moving party simply because the movant is the only one with personal knowledge of the facts. Such a view would render summary judgment a mechanism by which a movant with exclusive personal knowledge of the existence of an element of a non-movant's claim or defense could obtain judgment without ever taking a position as to the truth of the allegation. Moreover, it cannot be said that a claim or defense is factually unsupported in such circumstances, because the failure to deny a fact of which the movant has personal knowledge itself creates an inference that the fact is true—at least on a motion for summary judgment where all permissible inferences are drawn in favor of the non-movant.[24]

Of course, the circumstances of this case admittedly are rare. On well-litigated motion practice, both sides normally seize the opportunity to conduct discovery and put their evidence before the Court. Where, though, as here, a party is unrepresented by counsel, the opportunity for gamesmanship, borne of plaintiffs' practical limitations in pursuing discovery, is unchecked. Rule 56 should not be construed to encourage such tactics. In short, the City has failed to meet its burden on the *Monell* issue.

### Vegetarian Diet

■ The City objects also to Judge Maas' recommendation for denial of summary judgment on plaintiff's First Amendment claim regarding the denial of vegetarian meals. The City contends that plaintiff (1) requested vegetarian meals based on health concerns rather than religious beliefs, and (2) never informed prison personnel of the religious basis for his vegetarian request. The City contends also, as it does with respect to the medical isolation issue, that plaintiff has failed to offer evidence that the City has a policy of denying vegetarian meals to prisoners whose request for them is grounded in religious beliefs.

As Judge Maas noted, plaintiff testified at his deposition that his dietary restrictions were based in part upon his religious beliefs.[25] Although he testified to the contrary in other portions of his deposition, the conflicting testimony does not render the issue undisputed for purposes of this motion.

---

**23.** *Id.* at 323–24, 106 S.Ct. 2548.

**24.** At least one court has called the movant's bluff even when the movant lacked exclusive personal knowledge, but simply failed to deny an essential element of the non-movant's claim. *See Thompson v. Williamson County,* 219 F.3d 555 (6th Cir.2000) (where defendants on motion for summary judgment argued that plaintiffs failed to offer evidence that son was disabled within meaning of ADA, but did not dispute it, court assumed son had qualifying disability).

**25.** *See* Davis. Dep. 10/13/99 at 61; Davis Dep. 11/3/99 at 42.

Defendant's second argument fails as well. Although plaintiff testified at his deposition that he failed to inform the Rikers personnel present during his week-long incarceration that he was a vegetarian in part because of his religious beliefs,[26] he testified also that he did so inform the intake personnel.[27]

For the reasons discussed previously, the City's argument that plaintiff has presented no evidence on the existence of a municipal policy fails as well.

### Conclusion

For the foregoing reasons and, to the extent applicable, those contained in Magistrate Judge Maas' R & R, the defendants' motion for summary judgment dismissing the complaint is granted in all respects, save that the motion is denied insofar as plaintiff asserts that his free exercise right was violated by the alleged heightened restrictions of medical isolation and the denial of a vegetarian diet.

SO ORDERED.

---

**26.** *See* Davis Dep. 11/3/99 at 9.

**27.** *See* Davis Dep. 10/13/99 at 176–77.