Christine **GALLIMORE– WRIGHT**, Plaintiff,

v.

The **LONG ISLAND RAILROAD COMPANY**, Defendant.

No. 02 Civ.3968(LAK).

United States District Court, S.D. New York.

Feb. 4, 2005.

Philip J. Dinhofer, New York City, for Plaintiff.

Priscilla Lundin, Mary Jennings Mahon, Kelly A. Reape, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action by a former Long Island Railroad ("LIRR") worker for negligent and intentional infliction of emotional distress under the Federal Employers' Liability Act ("FELA")[1] and for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and parallel state and local laws. Discovery having been

---

1. 45 U.S.C. § 51 *et seq.*

2. 42 U.S.C. § 2000e *et seq.*

completed, defendant moves for summary judgment dismissing the complaint.

*Facts*

### A. Plaintiff's Failure to Comply With Local Rule 56.1

A preliminary matter must be addressed before getting to the pertinent facts.

On a motion for summary judgment, the moving party bears the burden of demonstrating that there is no genuine issue of material fact and that. it is entitled to judgment as a matter of law.[3] In considering such a motion, all facts and inferences reasonably drawn therefrom are construed in favor of the nonmoving party.[4]

■ Local Civil Rule 56.1 of this Court, which is substantially similar to antecedents that have been in effect for many years, provides in relevant part as follows:

"(a) Upon any motion for summary judgment . . ., there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion."

"(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

"(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

"(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."

The purpose of the rule "is to assist the Court in understanding the scope of the summary judgment motion by highlighting those facts which the parties contend are in dispute."[5] In the absence of the required statements, "the Court is forced to scour the record on its own in a search for evidence which may support that party's contention that a certain fact is not in dispute."[6]

■ In order for a Rule 56.1 statement in opposition to a motion for summary judgment to serve this purpose, it must respond appropriately to the movant's statement. Thus, "[a] proper Rule 56.1 statement submitted by a non-movant should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint" and must cite admissible evidence in support of the non-movant's contention that there is admissible evidence creating a genuine issue for trial.[7] And while it "is

**3.** *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999).

**4.** *Id.*

**5.** *Rodriguez v. Schneider*, No. 95 Civ. 4083(RPP), 1999 WL 459813, at *1 n. 3 (S.D.N.Y. June 29, 1999). *Accord, Archie Comic Pubs., Inc. v. DeCarlo*, 258 F.Supp.2d 315, 317 (S.D.N.Y.2003), *aff'd substantially on opinion below*, 88 Fed.Appx. 468 (2d Cir. 2004).

**6.** *Id. Accord, e.g., Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577(LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug.19, 2002); *Fernandez v. DeLeno*, 71 F.Supp.2d 224, 227–28 (S.D.N.Y.1999).

**7.** *Rodriguez*, 1999 WL 459813, at *1 n. 3. *Accord, Archie Comic*, 258 F.Supp.2d at 317–18.

permissible for the non-movant to provide a separate statement, apart from this paragraph-by-paragraph response, in which it lists other facts it claims to be in dispute ... [,] this separate statement is *not* a substitute for the paragraph-by-paragraph response. The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted in its paragraph-by-paragraph response without citation." [8]

■ Defendant has submitted a seven page Rule 56.1 statement containing 44 numbered paragraphs, each of which properly cites evidence of record. Plaintiff's Rule 56.1 statement does not respond at all to 32 of defendant's paragraphs and responds to nine more only by asserting that the facts there stated are not relevant. Hence, the facts asserted in those 41 paragraphs of defendant's Rule 56.1 statement are deemed admitted.[9] The Court therefore accepts as true the assertions in all but paragraphs 13, 27, and 33 of defendant's Rule 56.1 statement as well as the stipulated facts contained in Section III of the joint pretrial order.

*B. The Evidence*

Plaintiff was hired by the LIRR in March 1996 as a third rail electrical traction helper and was the only female electrician at the railroad throughout her period of employment.[10]

### 1. The 1996 Manta Incident and the First Lawsuit

In July 1996, plaintiff claimed that a male co-worker, Philip Manta, while under the influence of alcohol and/or cocaine, made sexually unwanted comments, propositioned her, and touched her breasts with a knife. He then allegedly crossed the street, hired a prostitute, returned with the prostitute to the work place, and engaged in sexual intercourse with her in view of plaintiff and other LIRR employees.

Shortly after the incident, plaintiff complained to LIRR supervisory personnel and, on August 1, 1996, submitted a complaint to the Equal Employment Opportunity Commission ("EEOC").[11] Disciplinary charges were brought against Manta and five other LIRR employees. Manta was fired and did not work at the LIRR for more than two years, until he was reinstated by an arbitrator.[12]

In June 1997, plaintiff sued the LIRR and Manta in the Eastern District of New York.[13] The complaint alleged that plaintiff had been subjected to sexual harassment, sexual assault, and retaliation and asserted claims under the FELA, Title VII, state and local employment discrimination laws, and other state law theories.

---

8. *Rodriguez,* 1999 WL 459813, at *1 n. 3 (emphasis in original). *Accord, Archie Comic,* 258 F.Supp.2d at 318.

9. Plaintiff disputes all or part of the assertions contained in paragraphs 13, 27 and 33 of defendant's statement. The deposition testimony relied upon by both sides with respect to paragraph 13 supports the defendant's assertion rather than the plaintiff's. The disputed portions of paragraphs 27 and 33 are immaterial.

10. Joint Pretrial Order ("PTO"), § III, ¶¶ 2–3.

11. Pl. Exs. 10, 16; Gallimore–Wright Dep. 197–200, 203.

12. PTO ¶ 6; Def. 56.1 St. ¶¶ 6–8; Gallimore–Wright Dep. 222. (Unless otherwise indicated, all references to the PTO are to Section III, the stipulated facts.)

13. *Gallimore–Wright v. Long Isl. R.R.,* No. 97 Civ. 3500 (E.D.N.Y.). The complaint is Exhibit C to the Reape affidavit and is referred to as "EDNY Cpt."

On March 3, 2000, plaintiff and the LIRR settled the Eastern District action, and plaintiff, who received $27,000, gave the LIRR a general release of all claims and causes of action which she had up to the date of the release.[14]

### 2. Subsequent Events

#### (a) Manta

When Manta was scheduled to return to work at the LIRR, plaintiff's supervisors told her that Manta was coming back and that they would "try [their] best not to have both of you in close contact."[15] Nevertheless, plaintiff had a number of encounters with Manta that are at issue here.

First, on an occasion when plaintiff was digging a trench in the Jamaica station, perhaps in 2000, she emerged from under a platform "and there he was looking at me" from about ten feet away.[16] Manta said nothing and made no gestures.[17] Plaintiff, however, claims that she "freaked out and ... was helped off the track" because she "froze, ... couldn't move."[18]

Second, on four or five occasions, plaintiff saw Manta, who was employed in the same department, in a shop that she had to visit every morning to obtain materials.[19] On at least one of these occasions, "he was ... laughing and carrying on ..."[20] On none of these occasions, however, did Manta speak to plaintiff or *vice versa*.[21]

Finally, in the summer of 2000, plaintiff was studying for an examination to become a block operator.[22] A two week class was offered to assist job candidates for block operator and boom truck jobs.[23] After plaintiff signed up to take the class, she learned that Manta was going to be in the class, which he had to take in order to requalify for his job.[24] Plaintiff complained to her supervisor, Mr. Puciloski.[25] Puciloski, however, said that his hands were tied "because in order for him [Manta] to get back on the rail he would have to requalify."[26] Although plaintiff could have elected to take the next class, six months later, she decided to go ahead with this one.[27] Manta never spoke to her, but she later decided to leave the class because, she claims, she did not want to be in the same room as Manta.[28]

#### (b) Plaintiff's Termination

In the summer of 2000, two disciplinary charges were made against plaintiff. On June 8, 2000, she was charged with conduct unbecoming an employee for being off assignment for her entire tour of duty.[29] And on August 2, 2000, she was accused of cursing at and verbally and physically threatening a supervisor and with failing to follow a foreman's directions.[30] Disci-

14. Def. 56.1 St. ¶ 4.

15. Gallimore–Wright Dep. 215.

16. *Id.* 210–11.

17. *Id.* 211; Def. 56.1 St. ¶ 11.

18. Gallimore–Wright Dep. 211.

19. *Id.* 214–16.

20. *Id.* 215.

21. *Id.* 216–17; Def. 56.1 St. ¶ 14.

22. Gallimore–Wright Dep. 159.

23. *Id.* 227–28.

24. *Id.* 231–32, 237; Def. 56.1 St. ¶¶ 17–22.

25. This is the same individual who told her that he would try to keep plaintiff and Manta apart once Manta was ordered reinstated.

26. Gallimore–Wright Dep. 237.

27. *Id.* 235, 237–38.

28. *Id.* 160, 240; Def. 56.1 St. ¶¶ 23–24.

29. *Id.* ¶ 31.

30. *Id.* ¶ 25.

plinary trials were held over several days in December 2000 during which plaintiff was represented by the general chairman of her union and evidence was presented.[31] In January 2001, she was found guilty of all charges and dismissed from her job.[32] Plaintiff appealed both rulings to the LIRR's director of labor relations, but he upheld both.[33]

Once plaintiff exhausted her remedies within the LIRR, she appealed her dismissal to Public Law Board No. 6495. The Board upheld the dismissal based on the August 2, 2000 charges, stating that plaintiff's

> "behavior was totally inappropriate; she did not properly perform her job duties and engaged in actions ... which need not be tolerated by any employee or Carrier ... [Plaintiff] is a short-term employee whose actions were completely unacceptable. As such it is [the Board's] determination that [the LIRR] took appropriate action when it elected, following trial, to sever the employment relationship." [34]

In view of its affirmance of the termination based on the August 2, 2000 charge, the Board found it unnecessary to consider the appeal relating to the earlier one.[35]

### 3. Plaintiff's Claims

Plaintiff claims in this action that the LIRR is liable to her for failing to take appropriate precautions to prevent her from being in Manta's presence, a situation that she claims resulted in substantial emotional distress. She asserts that the disciplinary charges against her were trumped up in order to retaliate against her and that the penalty imposed upon her was unduly severe. She claims also that she was terminated because of her gender.

### Discussion

### A. The FELA Claim

Plaintiff's FELA claim is that she is entitled to recover for the emotional distress she allegedly suffered as a result of encountering Manta in the work place after he was reinstated to his job and of being subjected to the LIRR disciplinary process. She asserts, evidently, that (1) the LIRR was negligent in allowing her to encounter Manta, (2) the encounter with the supervisor that led to her dismissal was a product of the LIRR's negligence in failing to "forwarn[ ] [the supervisor] of the traumatic events in [her] past" in that the supervisor might have treated her differently had he known of those events, in which case the incident may not have occurred, and (3) the LIRR inflicted emotional distress by bringing trumped up disciplinary charges.[36] The last of these claims is brought on the alternative theory that the infliction of emotional distress was intentional.

### 1. The Negligence Claims

■ The FELA allows recovery for the negligent infliction of emotional distress in appropriate circumstances. But those circumstances are not boundless.

In *Consolidated Rail Corp. v. Gottshall*,[37] the Supreme Court adopted the so-called "zone of danger" test to define "the proper scope of recovery for negligently inflicted emotional distress under FELA." [38] It:

---

**31.** *Id.* ¶¶ 27, 33. Plaintiff claims that certain questions she wished to ask were not allowed, although it is unclear who prohibited them. Gallimore–Wright Dep. 249–50.

**32.** Def. 56.1 St. ¶¶ 28, 34; Def. Exs. G, 1.

**33.** Def. 56.1 St. ¶¶ 29–30, 35–36.

**34.** *Id* ¶¶ 39, 41.

**35.** *Id.* ¶ 42.

**36.** Pl. Mem. 10–19.

**37.** 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

**38.** *Id.* at 550, 114 S.Ct. 2396.

"limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, 'those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.' " [39]

■ In this case, there is not even a suggestion that the LIRR's allegedly negligent failure to forewarn the supervisor about plaintiff's alleged past or its institution of disciplinary proceedings against plaintiff resulted in a physical impact or any risk of physical harm. Even if it was negligent, that negligence did not place plaintiff "within the zone of danger of physical impact." Plaintiff cannot recover under the FELA for any resulting emotional distress.

■ The exposure to Manta is another matter. Plaintiff claimed that she was assaulted by Manta in 1996. The LIRR knew that and, indeed, had brought disciplinary charges against and fired him for that incident. Thus, assuming *arguendo* that the LIRR was negligent in allowing Manta to be in plaintiff's presence once he was reinstated,[40] the question is whether that negligence could be found to have placed plaintiff "within the zone of danger of physical impact."

Manta's behavior in 1996, assuming the truth of plaintiff's story, was bizarre and quite physical. A jury reasonably could find that plaintiff was at physical risk once Manta returned to the railroad if the two were to find themselves in close proximity. The negligent infliction of emotional distress claim based on this theory therefore will stand.

### 2. The Intentional Infliction of Emotional Distress Claim

As noted, plaintiff claims that the LIRR intentionally inflicted emotional distress upon her by "invocation of the disciplinary process [as] part of a deliberate campaign by the LIRR to get rid of plaintiff ... in retaliation for [her] having filed several charges with the EEOC and for having commenced and·settled" the Eastern District action.[41]

Although the Supreme Court left the issue open in *Gottshall*,[42] the Second Circuit has held that "claims of intentional infliction of emotional distress can be brought under FELA." [43] It has not passed on the issue whether the zone of danger test applies to intentional as well as to negligent infliction claims,[44] which plaintiff stoutly denies.

■ In *Lancaster v. Norfolk & Western Ry. Co.,*[45] the Seventh Circuit held that the FELA does not create liability for intentional torts absent physical contact or a threat of physical contact. Judge Posner wrote: "[T]he FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact." [46] This

**39.** *Id.* at 547–48, 114 S.Ct. 2396 (quoting Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules,* 34 U. Fla. L.Rev. 477, 489 (1982)).

**40.** The LIRR does not challenge on this motion the sufficiency of the evidence on the issue of negligence.

**41.** Pl. Mem. 16.

**42.** *See* 512 U.S. at 541 n. 2, 114 S.Ct. 2396.

**43.** *Higgins v. Metro–North R.R. Co.,* 318 F.3d 422, 425 (2d Cir.2003).

**44.** *Id.* at 425 n. 1. *But see id.* at 428 (zone of danger test applies to intentional infliction claims) (Sotomayor, J., concurring).

**45.** 773 F.2d 807 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

**46.** *Id.* at 813.

view has been followed in all or most of the cases addressing the point.[47] Bearing in mind that the "central focus" of the FELA was "to provide compensation for the injuries and deaths caused by the physical dangers of railroad work,"[48] that the Supreme Court cited *Lancaster* with approval in *Gottshall*,[49] and Judge Sotomayor's persuasive opinion in *Higgins*,[50] this Court holds that the zone of danger test applies to claims under the FELA of intentional infliction of emotional distress.

■ Application of this rule to the facts of plaintiff's claim is straightforward. She contends that the railroad intentionally inflicted emotional distress upon her by undertaking a deliberate campaign to subject her to discipline and fire her in retaliation for her prior lawsuit. Reprehensible as such a campaign would have been had it occurred, there is no suggestion that it resulted in any physical impact on plaintiff or brought her within the zone of danger of such an impact. Accordingly, her

FELA intentional infliction claim must be dismissed.

### B. Title VII—Retaliation

Plaintiff claims that she was disciplined and fired in retaliation for her prior lawsuit.

■ In order to make out a *prima facie* claim of retaliation, the employee must show that (1) she participated in a protected activity, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action.[51] The LIRR concedes that the lawsuit was protected activity and that the termination was an adverse employment action. It challenges, however, the existence of any causal connection between the two. As this is an issue on which plaintiff would bear the burden of proof at trial, she was obliged to come forward with admissible evidence[52] sufficient to raise a genuine issue for trial[53] in order to avoid summary

---

47. *E.g., Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95–96 (7th Cir.1988), cert. denied, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989); *Adkins v. Seabord Sys. R.R.*, 821 F.2d 340, 342 (6th Cir.1987), cert. denied, 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987); *Cavanaugh v. Burlington Northern R.R. Co.*, 941 F.Supp. 872, 883 (D.Minn.1996); *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill.2d 369, 381–82, 240 Ill.Dec. 691, 718 N.E.2d 172, 179 (1999).

48. *Gottshall*, 512 U.S. at 555, 114 S.Ct. 2396.

49. *Id.* at 556, 558.

50. 318 F.3d at 428–32.

51. *E.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998).

52. *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123–24 (2d Cir.2001); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir.1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65–66 (2d Cir.1997).

53. *E.g., Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (when nonmoving party bears burden of proof at trial, moving party is entitled to summary judgment if nonmovant fails to make showing on essential element of its claim); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *But see Davis v. City of New York*, 142 F.Supp.2d 461, 467 (S.D.N.Y.2001) (noting that the purpose of Rule 56 is "to isolate and dispose of factually unsupported claims or defenses" and holding that " '[f]actually unsupported' claims or defenses cannot include those for which factual support may exist, but is unavailable to the non-moving party simply because the movant is the only one with personal knowledge of the facts").

judgment on this issue. She relies on what she describes as both direct and circumstantial evidence.

### 1. Evidence of Causation

#### (a) So–Called Direct Evidence

■ The first bit of direct evidence, plaintiff claims, is that "from the time following when she first filed her [EEOC] charges, through the duration of her prior Eastern District . . . lawsuit, defendant began collecting useless 'character' information in plaintiff's personnel file regarding spurious allegations of her supposed misconduct."[54] From this premise, she argues, "the only reason why such scandalous material accumulated in her folder was in anticipation of a time when it could be used against her . . . [and that this] is concrete proof of the LIRR's ongoing and deliberate intent to be rid of plaintiff when the time and circumstances permitted."[55] Putting aside the fact that the characterization of this evidence as "direct" is wrong—if there were such evidence, it manifestly would be "circumstantial"—the argument is baseless.

There is not a single reference in plaintiff's brief to any evidence supporting the unsworn assertions quoted above.[56] The only reference in her Rule 56.1 statement is paragraph 23 which in turn refers only to plaintiff's exhibit 8 in opposition to the motion.[57] Exhibit 8 consists of a stack of documents produced in the lawsuit, the pages of which are numbered from 1 through 1283. There is nothing in plaintiff's memorandum or Rule 56.1 statement to indicate what in Exhibit 8 she relies upon save her reference to documents in her "personnel file." And the cursory index to Exhibit 8 that plaintiff submitted does not identify any subset of the 1283 pages as plaintiff's personnel file.[58]

As noted, plaintiff, in order to avoid summary judgment on this issue, was obliged to come forward with admissible evidence sufficient to raise a genuine issue for trial. Moreover, Local Rule 56.1 obliged her to set forth the facts upon which she relied in her Rule 56.1 statement and to support those assertions with citations to admissible evidence in the record. A general citation to a 1,283 page pile of documents, the only index to which suggests nothing supporting plaintiff's allegations,[59] does not satisfy the rule. It fails utterly to identify in any reasonable manner just what plaintiff relies upon, let alone demonstrate that whatever her counsel has in mind, if anything, is admissible in evidence.[60] As the Seventh Circuit wrote not long ago:

> "Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried' in the record."[61]

Given plaintiff's failure to identify any supporting evidence, the Court is entitled to assume that there is none. Moreover, the

---

54. Pl. Mem. 24.

55. *Id.* 24–25.

56. *Id.* 24–28.

57. Pl. 56.1 St. ¶ 23.

58. Dinhofer Decl., July 12, 2004, ¶ 3.

59. *Id.*

60. The fact that the documents were produced by defendant does not alone make them *admissible to prove anything other than* the fact that defendant produced them.

61. *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002), *cert. denied*, 539 U.S. 941, 123 S.Ct. 2606, 156 L.Ed.2d 626 (2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)).

Court has reviewed the portions of Exhibit 8 that might be considered relevant parts of a "personnel file," [62] despite the fact that they are not so described, and found nothing to support plaintiff's claim. Accordingly, plaintiff's unsworn assertions about her personnel file are disregarded.[63]

### (b) Circumstantial Evidence—Timing

■ Plaintiff relies also on the proposition that a "showing that the protected activity was closely followed in time by the adverse action" [64] can suffice in a retaliation case to raise a genuine issue of material fact as to causation. She argues that the protected activity included the Eastern District lawsuit, that it ended with the transmission of the settlement payment to plaintiff's counsel on April 27, 2000, that the adverse action commenced with the first disciplinary charge on June 8, 2000,[65] and that an inference of causation therefore is warranted. But this evidence must be taken in context.

■ There is no bright line test establishing the significance of any given time interval between the protected activity and the adverse employment action although, to be sure, the shorter the interval, the more likely that an inference of causation will be warranted.[66] Indeed, if the *commencement* of protected activity preceded the bringing of the disciplinary action by a short interval and there were no other pertinent evidence, this Court might find the time interval alone sufficient to defeat summary judgment as to causation. But that is not what occurred here.

Plaintiff complained to the EEOC about the July 24, 1996 Manta incident in 1996.[67] The LIRR fired Manta on the basis of plaintiff's accusation, which certainly does not suggest a desire to retaliate against her for the complaint. The same is so of the LIRR's assurances to plaintiff, when the arbitrator ordered Manta's reinstatement, that it would try to keep the two apart, and this is so even if those efforts did not prevent the relatively alleged en-

62. These were described as Department of Human Resources records regarding plaintiff, Department of Labor Relations records regarding plaintiff, and Office of Diversity Management records regarding plaintiff.

63. Plaintiff's memorandum contains also a long list of incidents of alleged sexual harassment of and indifference to complaints by plaintiff, all of which also is offered as "direct" evidence of retaliatory intent. Pl. Mem. 25–28. But the evidence she relies upon in her Rule 56.1 statement is insufficient to support her assertions. Most of the incidents that plaintiff identifies—the display of sexually explicit drawings in public areas, her reassignment to an inconvenient location, and crude radio transmissions about her—occurred before the settlement of the Eastern District case. *See* Gallimore–Wright Dep. 172, 180–81; Pl.Ex. 32. Any claims that may have arisen from these incidents therefore were released. She further claims, without providing any dates, that "nobody ... [took] the time to show her" information about a certain job-related examination, and also that she

was "sexually degraded" by having to share and clean the toilet used by her male co-workers, who allegedly on one occasion placed feces in the gloves she used to clean. *See* Gallimore–Wright Dep. 145–46, 163–65. Regardless of whether these incidents occurred before or after the settlement and regardless of the extent to which claims based upon them were released, the Court does not see how they are probative of retaliatory intent on the part of the LIRR. Misbehavior by plaintiff's co-workers, if it occurred, does not logically suggest that the LIRR fired her in retaliation for her complaints.

64. *Manoharan v. Columbia Univ. Coll. of Phys. & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

65. Pl. Mem. 23.

66. *See, e.g., Gorman–Bakos v. Cornell Coop. Ext. of Schenectady Co.,* 252 F.3d 545, 554–55 & n. 5 (2d Cir.2001).

67. Pl.Ex. 10.

counters described above. Moreover, plaintiff filed the Eastern District action in June 1997 [68] and a second EEOC complaint in 1998 [69]—three and two years, respectively, before the first of the disciplinary complaints against her. Thus, while the maintenance of the Eastern District action until it was settled in March 2000 was protected activity, "common sense dictates that employees are much more likely to be retaliated against for filing a complaint against their employer than for resolving the dispute ... by reaching a settlement agreement." [70] This is especially so here, where the case was settled for only $27,000, which is not a large sum likely to have provoked a retaliatory response. Thus, while the temporal proximity between the *end* of the Eastern District case and the filing of the disciplinary charges favors plaintiff to some degree and might, in another context, justify an inference of causation, other circumstances seriously undercut the reasonableness of any such inference. Moreover, it must be considered in light of the nature and effect of the disciplinary proceedings themselves.

### 2. The Effect of the Disciplinary Decisions

In this case, the allegedly retaliatory disciplinary charges were tried before a trial officer. Plaintiff was represented by the chairman of her union. The trial decisions went against her. Her appeals to the highest authority in the LIRR were unsuccessful. Public Law Board No. 6495—a three person panel consisting of representatives of the LIRR and the union and a neutral member—unanimously upheld the dismissal. Moreover, while plaintiff offered excuses for her failure to appear for her work shift on June 2, 2000, which was the subject of the June 8 charge, the trial record of the August 2 charge overwhelmingly demonstrates that the plaintiff engaged in outrageous behavior.[71] Indeed, plaintiff admitted much of the alleged conduct. Although she denied using profanity, shouting or threatening her supervisor, she admitted that there was a disagreement and a "heated exchange," that she spoke to him in a "stern" manner, and that she referred to her husband during the argument in a manner that, despite her disagreement with this characterization, reasonably could have been construed as a threat.[72]

In *Alexander v. Gardner–Denver Co.*,[73] the Supreme Court held that a negative arbitration decision does not preclude a Title VII action although it "may be admitted as evidence and accorded such weight as the court deems appropriate." [74] In consequence, the disciplinary decisions in plaintiff's cases are not inherently conclusive. But they are very far from immaterial, even on a motion for summary judgment.

The Second Circuit confronted this issue in *Collins v. New York City Transit Authority*,[75] a case in which the employee claimed that his termination was discriminatory and retaliatory notwithstanding an arbitrator's finding that the plaintiff had assaulted a supervisor and upheld his termination. The Court started from the proposition that the fact that the plaintiff

---

**68.** PTO ¶ 4.

**69.** Pl.Ex. 11.

**70.** *Tennessee Valley Auth. v. Frady*, 134 F.3d 372 (table), 1998 WL 25003, at *3 n. 1 (6th Cir.1998).

**71.** *E.g.*, Def. Ex. E, at 677–748.

**72.** *Id.* at 749–56, 758–60.

**73.** 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

**74.** *Id.* at 60, 94 S.Ct. 1011.

**75.** 305 F.3d 113 (2d Cir.2002).

had had a fair hearing before a neutral arbitrator who had the power to prevent the firing was "highly probative of the absence of discriminatory intent in th[e] termination." [76] It pointed out that the plaintiff had offered insufficient evidence of causation linking his termination to discriminatory or retaliatory motives. And it went on to summarize as follows:

"In sum, a negative arbitration decision rendered under a CBA [collective bargaining agreement] does not preclude a Title VII action by a discharged employee. [citation omitted] However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or

that the impartiality of the proceeding was somehow compromised." [77]

 In this case, the decision on the August 2 charges and the termination were upheld unanimously by the Public Law Board. Plaintiff concedes that the "arbitrator"—a reference to the chair of the Public Law Board—was independent.[78] Indeed, the union member of the Board voted to uphold the decision below. Nor is there any suggestion that the decision was wrong in the sense it was against the weight of the evidence or incorrect in light of new evidence not presented to the Board. In consequence, *Collins* indicates that the LIRR is entitled to summary judgment dismissing plaintiff's claims that she was subjected to the August 2 charges and ultimately terminated in retaliation for protected activity.[79]

Plaintiff challenges this conclusion, arguing that *Collins* has no impact here because she did not present her discrimination and retaliation evidence in the disciplinary trial.[80] But that is entirely be-

---

76. *Id.* at 119.

77. *Id.*

78. Pl. Mem. 22 n. 12. The reference is obscure, but its intent is clear. Plaintiff complains that the "arbitrator" was not an attorney and "only held a Ph.D. degree." *Id.* As the single trial officer who heard both trials was an attorney, Olsen–Tank Dep. 12, Def. Exs. E, H, and the chair of the three-person Public Law Board held a Ph.D., the reference to the "independent arbitrator" necessarily is to the chair of the Public Law Board.

79. One might question the Court of Appeals' reasoning in *Collins* to a limited extent. A plaintiff is entitled to recover on a discrimination or retaliation claim if the discriminatory animus or retaliatory motive was a substantial or motivating factor in the employment decision. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Even if a proscribed motive was a substantial factor, however, the employer still prevails if it

proves that it would have made the same decision even in the absence of the proscribed motive. *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 180 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion)).

This Court agrees that the decision of an independent arbitrator upholding a termination or other adverse employment action should be conclusive, in the absence of strong evidence that the decision was wrong, on the issues of whether the employee was guilty of misconduct and whether that misconduct warranted termination. The existence of misconduct, even serious misconduct, however, does not logically exclude the possibility that a proscribed motive was a factor in the employer's decision. It goes much more strongly to the question whether the employee would have been terminated even in the absence of a discriminatory or retaliatory motive. But that is not what the Court of Appeals said in *Collins*, and this Court is bound by that decision.

80. Pl. Mem. 20–22.

side the point. There is no suggestion in *Collins* that the plaintiff had presented his evidence of discriminatory and retaliatory intent to the arbitrator. Certainly the Circuit did not rely on any findings by the arbitrator with respect to any such claims. And this makes good sense in light of what the Circuit did say. Its point was that the arbitration decision finding that the plaintiff assaulted his supervisor and was properly terminated was strong evidence of a lack of retaliatory or discriminatory intent which, in the absence of any meaningful proof to the contrary, prevented the plaintiff from making out a *prima facie* case. Accordingly, plaintiff's failure to present discrimination and retaliation evidence in the disciplinary trial does not affect the *Collins* analysis, which leads to dismissal of the retaliation claim based on the August 2 charge. Indeed, even apart from *Collins*, plaintiff's misbehavior that was the subject of the August 2 charge was sufficiently egregious that no reasonable trier of fact could find a causal connection between the charge and the end of the Eastern District lawsuit despite the fact that only four months had elapsed between the settlement and the charge.

The June 8 charge presents a closer question because it was not reviewed by the Public Law Board and it concerned less egregious behavior. Nevertheless, plaintiff admitted during the trial that she did not report for work on the day in question and that, apart from calling at 8:00 a.m. to say she was running late to search for a paycheck, she never called back to say she would be out for the remainder of the day.[81] Given that the lawsuit commenced four years earlier, that the settlement was not so favorable to plaintiff as to arouse animus by LIRR, and

that the charge was not unjustified, the Court concludes that no reasonable jury could find the disciplinary charge was in retaliation for the lawsuit or settlement.

Accordingly, defendant is entitled to summary judgment dismissing the retaliation claim.

### C. Title VII—Gender Discrimination and Hostile Work Environment

Plaintiff's memorandum argues that she was discriminated against in violation of Title VII in that she was terminated on the basis of her gender and subjected to a hostile work environment.[82] These claims fail.

#### 1. Gender Discrimination—Termination

Courts considering Title VII complaints follow the burden-shifting proof structure laid out in *McDonnell Douglas Corp. v. Green*[83] and its progeny.

"[A] plaintiff has the initial burden of making out a prima facie case of discrimination. This may be accomplished by showing (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class. Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class."

"If a plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production

---

**81.** Def. Ex. H, at 637–40.

**82.** Pl. Mem. 30–35.

**83.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination. The defendant is not required to prove that the articulated reason actually motivated its actions. 'If the defendant fails to discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail (assuming the other aspects of the prima facie case are not contested).' "

"If the defendant bears its burden of production, the presumption drops out of the analysis, and the defendant 'will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.' Evidence that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be 'sufficient to support a reasonable inference that prohibited discrimination occurred' and warrant submitting the case to the jury." [84]

Under *McDonnell Douglas* the plaintiff bears the initial burden of establishing a *prima facie* case.[85]

Here, plaintiff obviously satisfies the first and third criteria. But plaintiff runs into trouble with the others.

■ To begin with, this is an issue on which plaintiff would have the burden of proof at trial. Although plaintiff's memorandum claims that her job was filled by a man,[86] she cites no evidence for that assertion, either there or in her Rule 56.1 statement.[87] The Court, for reasons discussed above, is not obliged to hunt through her thousands of pages of exhibits in the hope of finding evidence to support it.

■ Second, the evidence of record establishes that the termination did not occur in circumstances giving rise to an inference of discrimination on the basis of plaintiff's gender. The Public Law Board's decision is entitled to substantial weight under *Collins*, and there is nothing to undermine its conclusion, on the basis of a full trial record, that plaintiff engaged in utterly inappropriate behavior warranting her termination. Even putting *Collins* aside, plaintiff's own admissions at the disciplinary trial are sufficient.

These considerations demonstrate that plaintiff has failed to make out a *prima facie* case for two independent reasons. But even if the existence of a *prima facie* case were assumed, this claim still would fail.

The LIRR certainly has come forward with legitimate, nondiscriminatory reasons for the termination. There is no evidence of pretext. Nor, even if there were, would the evidence justify a reasonable trier in finding that plaintiff's gender was a factor in the termination decision.

### 2. Hostile Work Environment—Sexual Harassment

Plaintiff claims also that she was subjected to a hostile work environment.[88]

---

**84.** *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98–99 (2d Cir.2001) (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 153–54 (2d Cir.2000)) (citations omitted).

**85.** *Fisher v. Vassar College*, 114 F.3d 1332, 1355 (2d Cir.1997) (*in banc* ), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).
The Court is mindful of Judge Chin's thoughtful opinion arguing for the rejection of the *McDonnell Douglas* approach in considering summary judgment motions in discrimination cases. *Lapsley v. Columbia University-College of Phys. & Surgeons*, 999 F.Supp. 506, 514–15 (S.D.N.Y.1998).

**86.** Pl. Mem. 30–31.

**87.** The Rule 56.1 statement does not even make the claim.

**88.** Pl. Mem. 33–35.

But she ignores the fact that she settled her previous sexual harassment case and gave the LIRR a general release in March 2000. Her papers on this motion make virtually no effort to cite to evidence of the incidents to which she refers or to show which if any occurred after the date of the release.

### Conclusion

Defendant's motion for summary judgment dismissing the complaint is granted in all respects save that the motion is denied insofar as it seeks dismissal of plaintiff's claims under the FELA that defendant negligently allowed Manta to come into contact with plaintiff after he returned to work and thus caused her emotional distress.

SO ORDERED.